Eseeman, L,
delivered the following opinion concurring.
This is an application to vacate a judgment entered in this Couid, at the last term, against Colyar & Marks, and to correct supposed mistakes apparent on the face of the record. The application is urged, under provisions of the Code, ss. 4501, 4502 and 2878.
The first of these sections is, that “In all cases in which the Supreme Court may give judgment through inadvertence and oversight, when upon the face of the record, no cause of action existed against the party, the Court may, -upon its own motion, vacate such judgment.”
The second section referred to is, that “ The Court may likewise at any time after final judgment, correct mistakes apparent on the face of the record, as provided in sec. 2878.
That section provides “ That every mistake apparent on the face of the record may be corrected by the Court at any time after final judgment, at the discretion of the Court.”
The case before the Court at last term was an agreed case, on which judgment has been rendered by the Court below in favor of Colyar & Marks, and appeal taken to this Court.
*171 The facts were substantially, that said Colyar & Marks, as attorneys, bad given their receipt to "W. M. Eussell and J. D. Eussell, for the collection of a certain bill of exchange, for $3,200. They obtained a judgment on said bill.
In 1862, the receipt of Colyar & Marks, and the judgment obtained by them was assigned by W. M. Eussell, surviving partner, etc., to McKinney and Pointer, but Colyar & Marks had no notice of the assignment.
The two Eussells went into the Confederate army, and were in Virginia. In 1863, the defendants in the judgment paid to Colyar & Marks the amount of the judgment, in Confederate Treasury notes, and took Colyar & Marks’ receipt in full for the same. This was at "Winchester, Tennessee, and it was agreed, that at this time Confederate notes constituted the common currency. Colyar & Marks immediately wrote to the Eus-sells, who, as they supposed, had the receipt, informing them of the collection of the judgment in Confederate money, to which 'they made no reply.
In 1865, McKinney and Porter demanded of Colyar & Marks, the money on said judgment, in current funds, that is, in greenbacks, which was refused; whereupon this agreed ease was made, and submitted to the Circuit Judge, who held that the parties were not liable.
The grounds stated in this application as made to fis, are, that it appears from the opinion of the Court at the last term written by Judge McClain, *172 that “ The majority of the Court hold (the writer of the opinion not concurring) that Colyar & Marks are estopped from denying that they received the full amount of the .judgment in legal funds, having receipted the judgment in full.” It is stated to have been the practice of our predecessors, that a Judge dissenting from the majority, should write the opinion of the Court, and that Judge McClain had a correct view of the facts, and from his statement of the views of the majority of the Court, it is insisted that they certainly were not aware of the facts of the case, as it appears, as part of the agreed facts of the case, that it was paid in Confederate money, so that the case did not in fact present a question of estoppel, nor depend upon a denial, of the receipt of the amount of the judgment in current funds. It was not even so claimed by the plaintiffs in the case, but admitted that .the contrary was the case.
It is insisted most ingeniously and earnestly in the brief submitted to us, that the facts presented show such a case of mistake and oversight as, tinder the sections of the Code referred, to, authorizes us to vacate the judgment, and correct the same.
*We need not examine the correctness or incorrectness of .the opinion of a majority of the Court, as it is so obviously incorrect as to be apparent to all, without reasoning or authority.
The question for our consideration, however, is not the correctness or incorrectness of the opinion *173 then given — but whether the judgment given was rendered by that Court through inadvertence or-oversight, when upon the face of the record no cause of action existed -against the party.
We can see that no cause of action existed — but the rendition of this judgment by inadvertence and oversight, does not appear.
The following is the opinion of the Court at the last term:
“This case was presented to the Court below, without pleadings, upon an agreed state of facts, pursuant to the provisions of the Code on that subject.
The case presented is simply this:
A bill of exchange was placed by "W. M. and J. D. Russell in the hands of Colyar & Marks, as. attorneys, for collection, for which they executed their receipt. This receipt was transferred to the plaintiffs.
Colyar & Marks procured, judgment on this bill of exchange, and an appeal was taken to this Court.
Afterwards, and during the war, the defendants in the judgment paid to Colyar & Marks the amount of the judgment in Confederate money, and Colyar & Marks thereupon gave.the defendants in the judgment a receipt, showing payment of • the judgment. This suit is brought against Colyar & Marks to recover the amount of the judgment. There was judgment below in favor of Colyar & Marks, from which an appeal was taken by the plaintiffs to this Court.
The majority of the Court hold (the writer of *174 this opinion not concurring) that Colyar & Marks are estopped from denying that they received the full amount of the judgment in legal funds, having receipted tlie judgment in full.
I am of the opinion that the right of the plaintiffs to recover is governed by the ordinary rule in such cases between principal and agent; that the extent of the principal’s right of recovery depends upon the amount of injury sustained.
The receipt of the Confederate money,, and the giving of a receipt showing payment of the judgment, is not a satisfaction of the judgment, and consequently they are not in my opinion entitled to recover against Colyar & Marks.
Proceeding to render the judgment here, which, in the opinion of the majority of the Court should have beeq rendered below, the defendants in error will have judgment for the amount of the judgment recovered on the. bill of exchange with interest and costs.”
The purpose of the statute was, that in cases where, from inadvertence, that is, the mind of the Court not being turned to the fact, or by an oversight, not having observed it, a wrong judgment had been rendered, and it should appear from the records of 'the Court that such was the case, a correction might be made. Now we cannot see that a majority of the Court failed to have their minds turned to the facts of the case, or, by-oversight, omitted to observe them. On the contrary, it would seem that as there was a dissenting view of it presented by Judge *175 "McClain, and for that reason he was required to write the opinion, then it must bare been presented to the other members before he was directed to write it, and the fact that his dissent was based on the ""facts of the case that it is now insisted were overlooked, would seem to make this view of the matter conclusive. There was no oversight, or inadvertence, but only a very erroneous view of the application, and effect of a rule of law to those facts, as they were presented in the record. This we have no power to correct. It would involve the re-investigation by us, if the principle was adopted, of a large number of eases heretofore decided, and be productive of interminable mischief. So far from having been overlooked, the very facts of the case (that is the payment of the Confederate money to Colyar & ’ Marks, and their receipt for it) on .which we are asked to vacate the judgment, were discussed, are presented in the opinion, and their legal effect weighed, and different conclusions arrived at by two members of the Court on these questions, from those arrived at by the third. If this can be called inadvertence and oversight, then these words serve but to mislead us, as they, would be thus construed to mean the very opposite of all the ideas which they have before been understood to express. In other words, 1‘ inadvertence and oversight” would be, under this- statute, careful attention and weighing of the facts, said to be overlooked, or inadvertently passed by, only provided that an erroneous conclusion was arrived at.
*176 It is insisted, however, that we must presume that this Court always decides correctly, when the facts are not overlooked, or that- whenever an error is clearly seen, that we must presume that it was the result of “inadvertence and oversight” — and, therefore, under these provisions of the Code, we would be bound to correct the error, by vacating the judgment. This would be a comfortable and somewhat flattering doctrine, if we could only believe it sound; but we confess that we are unable to bring ourselves fairly to a conclusion so favorable, either to our own infallibility, or even to that of our predecessors on this bench, commencing with its first organization, and coming down to the present time. "We see in our books of reports many cases, where, upon review of the deliberate opinions of the Court, when the same question was raised in other cases, the previous opinions have been overruled, and held not to have been decided correctly. Yet we may add in all these cases we have no report of a case in which these judgments, rendered in pursuance of these erroneous opinions, were ever vacated and set aside for this cause. The principle is axiomatic, one never questioned, that the general rule of law is, and has at all times been, that this Court could not vacate its judgments after the term at which they wore rendered, has expired. "We look at the statute, and we find a special exception to this rule provided by the legislature. It specifies the cases in which we may depart from this rule; what are they? In all *177 cases in wbicb the Supreme Court may give judgment through inadvertence and oversight, when upon the face of the record no cause of action existed against the party, the Court may, upon its own motion, vacate such judgment. It might be plausibly maintained that this section only provides for the' action of the Court, upon its own motion, on discovering the erroneous judgment, and at the same term at which it was rendered, for the next section provides for the correction of mistakes, as provided for in sec. 2878, and that section provides for the correction of mistakes at any term after final judgment. This provision might have been unnecessary — but many statutes are passed giving remedies, when the common law was equally effective for the end.
But passing this by, and not insisting on it, we look at the statute for our power and authority in the particular case. What must appear? First, that the Supreme Court has given judgment through “inadvertence and oversight” — we must find the elements here laid down, before we look to the question of error at all. These are the only judgments we can vacate — such as are rendered or given through “inadvertence and oversight.” If we fail to find this to have been the case, we must stop at once. We have no authority or power in the premises; for in such case, the expression of one thing, would, by necessary implication, exclude the other.
The theory on which this relief is sought, however, goes on a mode of reasoning the opposite of *178 this provision of the statute. It is, first, to find the judgment to be erroneous; when this error is found, to insist that this ascertains the other facts to exist; that is, that the judgment was given through “ oversight and inadvertence” — and then we must proceed to the correction. In a word, on any principle insisted on for the action of this Court in this case, we have but to decide that, from examination of the record, an erroneous judgment has been rendered, and then presume the “ inadvei'tence and oversight,” .and vacate the judgment.
It may well make us pause, when we look at the consequences of this view of the case, and of the establishment of such a rule. "Why may not every case decided in all the past history of this Court be reviewed by us? Would not the rule compel us to examine every record remaining on file in this Court, at the instance of counsel, in order to determine whether or not there was error in the judgment rendered; for, upon the establishment of the error, the relief must be given, as the “ oversight and inadvertence” are presumed? Where can we draw the limit to our action? Shall we say, only in hard cases, of manifest injustice ? . If so, how are we to decide upon the injustice of the judgment, without examination of the record, and comparison of the case therein made, with the judgment rendered ? In other words, we can see that instead of this Court being a court of appeals for hearing cases brought up from the inferior tribunals, it would, upon this theory, become practically but a Court for review of the opin *179 ions and judgments of our predecessors — and in turn, those who may come after us, would have to engage in the same character of investigation, and so this tribunal would be charged,- not only with decisions of cases here on appeal, but also the revision and correction of all the accumulations of past years. Such a conclusion is to us inevitable from the premises assumed, and would in its results be simply monstrous.
In looking at the facts before us.that induced the judgment, we mean the action -of the court ; we not only see no “inadvertence or oversight,” but the contrary most clearly appears. The fact that the payment was made is referred to, and discussed by the members of the Court, McClain, J., dissenting from the views of the other two, and holding, that the payment in Confederate money was no payment at all; that the judgment remained in full force, and as the money was not a payment, the defendants, as attorneys, had not received payment of the money due to complainants, nor was the judgment satisfied, and therefore they were not liable.
The other two Judges, however, held that the receipt given by the attorneys for the money, es-topped them, and the law presumed they had received the money. Estopped- them how ? we ask. It could only be, from saying that they had received Confederate or worthless money, or rather, from taking any benefit from this fact. Such seems to have been the reasoning of the majority of the Court.
Was not here a direct, deliberate attention given to' the very facts on which we are asked to vacate *180 this judgment? Was not the effect of the payment in Confederate money discussed by the court, and their conclusion, however wrong the result, not of inadvertence, but of its opposite; not of oversight, but of a direct sight, so to speak, at the facts involved? If this is inadvertence or oversight, then we are at a loss to conceive of what can be their opposites.
As to the presumption insisted on, we can see clearly, that if we presume inadvertence and oversight, we certainly cannot be called on to presume it in the face of the truth of the case, and contrary to the facts as we find them in the record. We cannot but think such a presumption would, at any rate, be a disputable one; and if so, its refutation is clearly -found on the face of the record presented. In fact, this reasoning calls on us to hold that the judgment was rendered through inadvertence and oversight, when we see from the opinion of the court, that it is the very judgment ordered to be rendered by the majority of the court, with a clear understanding of what they had ordered. We may feel astonishment at their opinion, but certainly not at the judgment, as it is precisely the one authorized by that opinion.
This Court has said: “ There must of necessity be an end of litigation somewhere. To permit the judgments of the Courts to be opened again, and discussed as often as a real or imaginary error in the judgment of the Court, in point of law, or in conclusions of fact, might be discovered, would be intolerably vexa *181 tious. As to grievances and complaints of tbis sort, tbe judgments and decrees of tbis Court must necessarily be final:” Elliott v. Cochran, 1 Col., 393.
Tbe court s$y further in tbe above case, that, “ as to tbe errors in tbe judgment of tbe court, in point of law, existing in tbe decree on wbicb tbe report of tbe clerk is based, or in unwarranted deductions of fact, if any sucb there be,' tbey, upon tbe principles already stated in tbis opinion, are beyond our reach— tbe law of tbe decree, as well as its conclusions upon tbe testimony in the cause, constitute tbe deliberate judgment of tbis Court in tbe case, and cannot be changed:” Ibid, 395.
We do not cite tbis case as construing section 4501 of tbe Code, but as laying down a universally settled principle of our law, and one that ought to guide us in our construction of tbe language of tbe section of tbe Code referred to.
■ On looking at tbe Act of 1846, p. 211, pamphlet acts, tbe views expressed in tbis opinion, as to tbe construction of tbis section of tbe Code, are shown to be a correct exposition of tbe intent of tbe legislature. That act provides: “ That in all cases in wbicb the
Supreme Court may have given judgment, or may hereafter give judgment against any party, through inadvertence or oversight, when upon tbe face of the record no cause of action existed against said party, it shall be tbe duty of said Court at any subsequent term to vacate sucb judgment, etc. Provided, That if it shall be apparent in tbe record, that tbe original judgment was rendered through inadvertence or over *182 sight, and against a party not liable to any judgment according to the law of the'land,” etc.
This enactment is transferred in substance into the section of the Code referred to, 4501 — and no more was intended than is specified in this act of 1846.
In the case presented to us, there is an erroneous conclusion as to the legal consequences of the facts of the case, and also as to the effect of a receipt, in connection with the other facts of the case; but these are not such errors as are the result of inadvertence or oversight; but as far as we can see, were the deliberate judgment of the Court upon the question presented.
It will be seen that the case provided for in sec. 4501 of the Code, is where a “judgment” is given “through inadvertence and oversight” — not where an opinion is formed from inadvertence and oversight. We could correct a judgment entered on the minutes, where we could see that the judgment was entered by inadvertence and oversight, but have no power to correct the opinions of this Court, after the term has expired at which the judgment is rendered.
We need hardly notice the provision of section 2878, as tliis ground is abandoned by counsel, that the Court may correct “ every mistake apparent on the face of the record at any term after final judgment, at the discretion of the Court.” The definition of the word mistake in its legal sense, as given by Mr. Story, Eq. Jur., vol. 1, § 110, is *183 decisive of this aspect of the case, that “ it is some unintentional act, omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence.” The judgment -of the court was in no sense a mistake under this definition; so far from being unintentional, it was the deliberate and purposed act of the court, done after an investigation of tlie case, based on wrong conclusions, as we think, both as to law and the facts; yet, nevertheless, their, conclusions as a court, and a final judgment on the matters presented for their decision, and must be held to conclude all further inquiry, as to the grounds of that judgment, with a view of revising or correcting the same.
We very much regret that we are compelled by the high demands of imperative duty, to dismiss the application of two gentlemen of the profession of such worth and -high character, and for whom we would willingly do anything that duty would permit; but it is better that even such men should bear this wrong, however unjustly, than that the law itself should suffer detriment, and its faithful administration be for a moment disregarded.
The petition is dismissed.